Thank you, your honors. Good morning, and may it please the court. My name is Caleb Grant, and I represent Mr. Andra Green. In 2011, Mr. Green pled guilty to two crimes of violence, as defined by Section 924C. Then, in 2015, the Supreme Court decided United States v. Johnson, which invalidated a similar residual clause in Section 924E. Mr. Green filed a 2255 motion within a year of that decision of Johnson. And while that case was on appeal before this court, the Supreme Court decided United States v. Davis. What's the issue for us to decide here? Everybody agreeing on count 29? Yes, your honor. The government has conceded both timeliness and infirmity for count 29, and it's our position that the motion was also timely as regards count 30, and that that conviction is also infirm. What do we need to do today? Your honor, today we asked the court to find that the motion was timely and that the conviction is infirm. And so we asked the court to reverse the district court and invalidate Mr. Green's case. The conviction is infirm based on what? Count 30 is infirm based on two reasons, your honor. First, that the Hobbs Act robbery is categorically broader than the 924C definition of crime of to replicate the work formerly done by the residual clause. Okay, so is your argument based on the forced clause or the residual clause? Well, your honor, the challenge here is a Davis challenge to the residual clause. And if it were just a conviction under the residual clause, Davis would answer that question firmly in Mr. Green's favor. In order to get to that question, however, we have to examine whether Mr. Green could have been convicted under the elements clause. And it's our position that he could not. Under the forced clause? The forced clause, yes. Did you raise the forced clause below at all? No, your honor. And this again, this is simply a way of examining whether Mr. Green could have been convicted under the residual clause. That's your argument for why it's not waived? Because this is, even though you didn't mention forced below, this is a way of examining? Exactly, your honor. This is kind of the criminal law one way of looking at whether that conviction could have been under the elements clause. And if not, then it must have been under the residual clause. And Davis would answer that that conviction would be infirm for that reason. So to examine the elements clause then, we have to look at whether Hobbs Act robbery is categorically broader than Section 924C. And it is for a very simple reason. After the decision in United States v. Taylor this last summer, the Supreme Court created a fairly bright line rule that laid out exactly how to analyze whether a predicate crime is a crime of violence. The Supreme Court said that in order to determine whether a predicate crime is a crime of violence, we have to look at whether on the four corners of the statutes, the government is required to prove the use, attempted use, or threatened use of force. And the question isn't whether the government sometimes has to prove those things, but whether it always has to prove those things. And here, Hobbs Act robbery can be committed by creating a fear of injury to intangible property. Intangible property, we know that that is part of the Hobbs Act robbery because of United States v. Mathis, a case out of this circuit, which found that there is no distinguishing between tangible and intangible property. Where is this going? Are you saying that 924C, the force clause, is unconstitutionally vague itself? That is one argument that we're making here today, Your Honor. But the broadness argument, the over breadth argument, is simply that 924C requires the use of physical force. And Hobbs Act robbery can be committed by creating a fear of injury to intangible property. And physical force, kind of on a metaphysical level, cannot be used against intangible property. And therefore, Hobbs Act robbery is broader than 924C's crime of violence definition. And we recognize, obviously, the weight of the authority against us here. But just last week, a district court judge in the Southern District of Florida, ruling from the bench, in fact, did find that after Taylor, applying the new test laid out in Taylor, and looking at the jury instructions for Hobbs Act robbery, that Hobbs Act robbery is broader than the 924C crime of violence definition. In particular, because of this intangible property argument. That court the only one to do that? So far, yes, Your Honor. This is a district court out of Florida. That's correct, a district court out of Florida. And obviously, again, we recognize that that's perhaps hopefully a persuasive ruling from that court. But the idea is that this tide is starting to change. After Taylor, the analysis... The tide is starting to change because of one district court in Florida? Well, Your Honor, after Taylor, the analysis changed pretty drastically. And the Supreme Court in Taylor, you know, really cut the analysis down to this bright line rule of, is the government always required to prove the use of attempted use or threatened use of force? What courts did in the past was kind of add on these extra tests in order to get around these tricky arguments like the intangible property argument. In particular, the courts have used tests like the reasonable probability test. And other circuits have done that explicitly. This court has, you know, cited to cases which do use that test. And they cited to those cases in Mathis. And, you know, the court hasn't expressly addressed why it did not consider the intangible property argument to show that Hobbs Act robbery is broader than the 924C crime of violence definition. But the court cited to those two cases in Mathis which relied on that reasonable probability test. And so it's reasonable to conclude that, to some extent at least, this court has used the reasonable probability test to get around this intangible property argument. In Mathis, did we discuss reasonable probability? Not explicitly, Your Honor. And again, this is where... What do you mean not explicitly? Not at all? Not at all, Your Honor. Not in the text. But again, citing to those cases. And the two citations are the only ones that even mention this attempt. But the two citations, the pinpoint sites that Mathis cites to, are not citing to the pages that discuss reasonable probability in those two cases. They're citing merely to the ultimate conclusion that it is a crime of violence. Correct, Your Honor. And that conclusion was reached by applying the reasonable probability test. You're saying that conclusion was reached in those other two cases, not in Mathis. Correct, Your Honor. But even if Mathis wasn't relying on this reasonable probability test, just because of the metaphysical impossibility of using physical force against intangible property, Mathis must have been doing something beyond the straightforward test that the Supreme Court laid out in Taylor. In addition to that, and to get to Judge Wynn's question about the constitutionality here of the Elements Clause, we can look at United States v. Malacu. And in that case, basically what the court did was create these kind of two conceptual buckets. A first was for pure property crimes, what are called pure property crimes. In that case, depredation against government property. And the court said that those were not categorically crimes of violence. But the problem is that that would mean that Hobbs Act robbery, if committed by injuring property, might not itself be categorically a crime of violence. And so the same judge that wrote Mathis, and that wrote Malacu, clarified that because Hobbs Act robbery was in this kind of second conceptual bucket, which involved the risk of bodily injury, then that made Hobbs Act robbery itself a crime of violence. The problem is that this collapses the distinction between the Elements Clause and the Residual Clause. In the Residual Clause, the test was whether there's a risk of use of force. And we know that from United States v. Stokely, that the risk of use of force is essentially that force must be violent force, and that is force capable of causing injury. And so the analysis with the Residual Clause is whether there's a risk, essentially, of injury. That's exactly the same analysis that the court applied in Malacu to determine that Hobbs Act robbery was a crime of violence, specifically that there's a risk of bodily injury because of the presence of two individuals. So because those analyses are the same, what's happening is that the court is using that same analysis to replicate the work that had formerly been done by the Residual Clause. And because it's doing that, and that's something that the Supreme Court in Taylor specifically said not to do, that collapses that distinction and introduces the same kind of constitutional infirmity into the Elements Clause. And that's what Judge Diaz pointed out in his dissent in Malacu. Now, briefly to turn to timeliness, Your Honors, which is the other issue today, as we argued in our brief, several other circuits have found that these types of motions, which are premised on Davis but based on Johnson, are timely. In particular, we have Gronda v. United States out of the 11th Circuit, Truby v. United States out of the 11th Circuit, and United States v. Vargas Soto out of the 5th. Well, and in this circuit, the government's conceded that point in at least four separate cases, correct? Correct, Your Honor. And, you know, the reasoning from both the other circuits and from the government's concessions is persuasive as to why this motion should also be found timely. And while the government has not conceded timeliness here for Count 30, in other cases, the government's concession of timeliness has gone so far as to say that Davis itself makes these kinds of claims timely. And that's in United States v. Williams out of this circuit in 2021. What does that mean in this case? You just said they didn't do it here, but they did it there. So what? Well, Your Honor, the reasoning that they used there is the reasoning that we asked the court to adopt today. You just said they didn't do it here. Correct, Your Honor. Is there any law of the case, or what is the value of the fact they did it in one case? I mean, if we follow that principle, there are a lot of things the government or perhaps the defendants do, but certainly the government do in one case. They don't do it in another case. I'm just trying to understand the legal basis, other than they gave a good reason for doing it was all there, but it wasn't done here. So, so what? Well, Your Honor, it's a good reason, as you point out, right? No, no, hold a minute. What do you mean it's a good reason, as I point out? I didn't point out the good reason. I asked a question. Why would we, why is that making a difference in this case? Well, Your Honor, the motion here was timely, and it was timely because while Davis came out in later than Johnson, what happened was that Mr. Green filed his 2255 motion within a year of Johnson, and Davis extended Johnson to the 924C statute, which Mr. Green was convicted under. So because Davis extended that finding in Johnson, effectively what would be happening is that the court would be penalizing Mr. Green for filing his motion too early. He filed it within a year of the case. I mean, Johnson was, you know, I've seen it described as a bolt from the blue. It really did undermine, you know, almost unanimous precedent in the lower courts and a Supreme Court decision, all of which had upheld the residual clause and the validity of the residual clause. And so Mr. Green filing within a year of Johnson is enough to show cause, and we can look at the Reed v. Ross kind of test here for overcoming procedural default. It's enough to show cause because of that unanimity of lower court precedent and the Supreme Court decision, and Johnson overturned that. And so by filing within a year of Johnson, Mr. Green was properly raising a challenge that he could not have raised realistically before Johnson. And the two counts that he pled guilty to were the two most serious counts of his indictment, and therefore he also was able to show prejudice under that standard. And so the court should find, therefore, that his motion was timely for that reason. And then finally, the Section 2255 statute discusses the timeliness of the motion itself and not the timeliness as regards each individual claim. And so by conceding that the motion was timely as regards Count 29, it's our position that the court should also find that the motion was timely as regards Count 30. And that's, you know, this is simply because, you know, these are both based on the same set of facts. These aren't two completely different claims, completely different charges. They're both from the same indictment, same set of facts. And so being timely for one should be timely for the other. We respectfully, therefore, ask this court to reverse the district court and invalidate Mr. Green's convictions. Thank you. Thank you, Mr. Birch. Mr. Attia. Thank you, Judge Gregory. Good morning. The defendant's challenge to Count 34 is barred by numerous procedural obstacles, any one of which is sufficient for the court to dismiss as challenge. The first, and we sort of have to start here because we are, after all, on appeal, is just a straight-up issue of preservation. The two key challenges the defendant raises here, the only two that really matter, the challenge to the Hobbs Act robbery and the challenge to the Elements Clause, neither of those claims are even remotely presented below. So they weren't raised below, so they're not properly before this court. The second reason why the defendant's challenge is procedurally barred is just a matter of procedural default. We spent five or six pages addressing the issue of procedural default in our brief. The defendant hasn't responded to a word of it. I heard a bit of it today, a bit of a response today. But there's no question that the defendant's challenge is defaulted. The only question is whether the defendant can show cause. We've included in our brief numerous cases defendants have been challenging. So you're arguing that it's not timely as to Count 34, correct? What is different in this case versus Williams, Brantley, Woodley, and McClammy, where the government said that those were timely based on Davis? Sure. So there are a few key differences. In all four of those cases, the defendants actually moved within a year of Johnson and challenged below the validity of their 924C convictions. They based their challenge on Johnson. They attacked the residual clause.  And the district court acknowledged as much in denying it. Well, there's a factual difference between those four cases and this case. In those four cases, the defendants actually challenged their convictions. They raised the challenge to their 924C convictions based on Johnson. They also included a challenge under the elements clause, sort of a two-step challenge. And the defendant here did not do that. Were there four of them pro se? I believe one of them was pro se. I think he was pro se initially, and then at some point maybe for response he got counsel. The key difference is that those defendants did actually assert the right under Johnson that then Davis later endorsed. And so this does get a little metaphysical, but if you're actually seeking to assert the right under Johnson, you're just calling it by a different name because Davis didn't exist. You're seeking to invalidate the residual clause, but you're doing it under Johnson. Your appeal is still pending. Davis comes out. Well, then Davis has endorsed that right, effectively rendering it timely. That's the theory, as I understand it, that informs the government's waiver. And it's also the theory that the 11th Circuit and Gronda reached on the issue of timeless, but that's not this defendant. Another reason why this case is different is that in all four of those cases there was actually an underlying merits claim, an actual challenge to the predicate offense, that each district court skipped over because they had just dismissed on timeliness grounds. And so this court remanded for the court to actually address the challenge that it never got to address because it had just dismissed on timeliness. And, of course, if that happened here, there's no underlying challenge to a predicate that's just sitting for Judge Smith to address. There's nothing in that motion. Another key distinguishing factor between this case and those cases is that those defendants actually all asked for a remand so that they could pursue either the challenge to a predicate offense or develop the record as to there were some issues that had to read an indictment or a plea agreement. Counsel, aren't those distinctions without a difference? The key is that with the Supreme Court in Davis retroactively said these issues deserve to be reviewed. And counsel, I mean, the defendant or the appellant here did what he could do. He challenged under Johnson that existed. It's like you can't have it both ways. Sometimes the government said, well, you should have anticipated what the law was going to be and therefore that's in your bar because you didn't anticipate it. Here's just the opposite. You're punishing him, as counsel said, because he was too early, because he's clairvoyant, because he's visionary about what justice might look like later with the Supreme Court, and the Supreme Court actually did it. And you're saying that it's different. There are distinctions, but they're really no different. It was before us. It's timely in terms of addressing the issues that Davis said were retroactive, right? Isn't that right? Perhaps if we actually had a real Davis challenge here, a challenge that actually relied on, for example, the defendant in Sims, had Davis existed, Davis would have resolved the whole case because he only had a conspiracy predicate. But we've waived our procedural offenses to count 29. What we have here are two elements clause challenges. We couldn't possibly waive timeliness on those issues because the defendant is seeking to assert a right that doesn't exist, in fact, a right that literally no court has ever recognized, a court of appeals at least, let alone the Supreme Court. That is a challenge to the elements clause. That's a brand-new challenge. And then the challenge to the status of the Hobbs Act robbery. So we can't really waive timeliness to the two claims that matter. Those are the rights the defendant is seeking to assert because they can't be found in any case law from the Supreme Court. But as Your Honor's point about clairvoyancy, the reason why we include it, and this is more of an answer, more of a procedural default issue than a timeliness issue, but I see how they overlap. We've included in our brief numerous examples of defendants as far back as the 90s, but certainly in 2016 challenging the status of Hobbs Act robbery as a predicate. I mean, that was literally all the rage after Johnson. There are scores of defendants who were doing that in just the Eastern District of Virginia. If there weren't word limitations, we would have included many more examples in our brief. And, of course, there were cases pending before this Court in Hare and Ali. These were all around the same time in 2016. The defendant in Mathis, also 2016. The defendant in Sims, also 2016. Everybody was making these challenges. So I don't think it's fair to say that there was anything novel about challenging the status of your predicate offense. We have examples from Lea Kyle, for example, in 2004, 2006. The Supreme Court is addressing elements clauses, residual clauses. And this Court in Fuertes in 2015, before Johnson, had already struck a predicate under both clauses before Johnson. So it's not really fair to say that we needed Johnson or even Davis to make what is really a garden variety elements clause challenge. What if you attempted to file a Davis-based 2255 motion now? Would that be time-barred? I think, I mean, we're obviously a year, more than a year after Davis. But the question is, well, what would he be asserting? If he's asserting these two claims, you know, tomorrow, the two claims that matter in this case, well, they'd be untimely or sort of premature because he couldn't satisfy 2255-F-3. But the reason why we waived S to Taylor, in a way, it benefits the defendant because, depending on what happens in this case, spares him from having to file a successive petition based on Taylor, is because he could. He deserves relief under Taylor. And so that conviction is infirm. But as to the two challenges here, the Hobbs Act Robbery Challenge and the Elements Clause Challenge, I don't think it would be timely because he couldn't satisfy F-3. Why would it be timely? Well, the Supreme Court would have to recognize a right to be free of unconstitutional elements clauses. That's their theory, and that's the right that they're seeking to assert. The same way the Supreme Court in Davis recognized the right to be free of unconstitutionally vague residual clauses. But isn't that really the merits of it? I mean, that may or may not be the case after we look at the merits. But timing, this is a different question, isn't it? I mean, is this the only temporal venue he would have to address it? And what you're raising on the merits, that may or may not be correct. But timeliness is something different. That's categorically saying because Davis opened it up for him to look at for a merits question. So it's not just because it's opened up, it's automatically a win. I mean, you suggest that because you may have defenses, it might win. But that's not dispositive of whether or not it's timely. I think it is. Oh, you think it is? I think it is. I think this Court's decision in Brown makes clear that the Supreme Court hasn't formally recognized the right. The right that they are trying to assert now is not the right to be free of a residual clause. We all agree that that clause is out. The right that they're trying to assert is the right to be free of an allegedly unconstitutional elements clause. And there's no case that establishes that proposition, not even close. And so there is an element, an aspect of timeliness that bleeds into merits. And I think Brown recognizes that. Other circuits disagree to some extent. What happened to the old rule of lenity? You just admitted that it bleeds, there's some leeching into it, but you said that we should decide that it's not timely. I mean, the rule of lenity designed to do that when there is some ambiguity and some question, it always inured to the benefit of the defendant. I mean, I used to be the criminal when I was in law school. I know it's hard to find it now, but isn't that the case? I don't think that's the case. I mean, lenity is. No, it's not the case in existing now, but there is a rule of lenity. There's definitely a rule of lenity, and it applies to statutes when courts have tried everything. Yeah, but that's the whole problem, isn't it? We're trying to get this thing straight. People were getting these draconian sentences increased because of predicate offenses, and now we know that they were infirmed. They're infirmed, and David said so in those cases. Isn't that why we look now at it, when we have a chance to look back at it? I don't think the defendant's sentence is draconian. He murdered two people. It's not. So that's just first and foremost. First and foremost, I was talking generally about draconian sentences, so don't take it out of context what I said. I said, in general, these predicate offenses were used to increase sentences that led to some draconian sentences. I didn't say this particular one, counsel. Even with that, that's your view, but I understand it. But I didn't say that. Okay, then I misunderstood. I apologize. You did. Your original question was, does lenity apply here? And my answer is no, lenity doesn't apply here because we're not construing a statute. That's ambiguous. This court has binding precedent on what it means for the Supreme Court to assert to recognize a right under F-3, and lenity doesn't really play a role in that respect. So I've gone through my three big-ticket reasons why the defendant's ultimate merits claim is procedurally barred. Final reason, even if the court gets to the merits, is this court's decision in Mathis. This court has held that Hobbes Act robbery is a crime of violence. It already addressed the intangible property theory of liability under the Hobbes Act, which we don't believe is actually a theory of liability, and this court can affirm for that reason alone. If the court has no other questions, I'd be happy to address any, but if not, happy to sit down. Are you going to respond to counsel's argument about us applying to tangible arguments? Sure. We don't think that you can commit a Hobbes Act robbery by threatening intangible property. This court in Mathis has already dealt with that issue. Every court of appeals that has passed on it has also rejected it under dueling theories. That's binding on this panel, and if the defendant wants to make further arguments, he can certainly do so in an en banc petition. But as far as this appeal, for present purposes, Mathis controls that question. When it says that the Hobbes Act robbery, or 924C, draws in a distinction between tangible and intangible property, does that acknowledge that robbery can be committed against intangible property? I don't think so. What does that mean? It says that neither the Hobbes Act robbery nor the 924C draws in a distinction between tangible and intangible property. So I think the best way to read that is that the two clauses are very, very similar. So whatever you say about one clause is likely going to be the same about the other clause. What we say about robbery, what it means to commit robbery, is going to be the same as what we say would satisfy the force clause. I think the reason why that's the best reading of that passage is because the paragraph above addresses the defendant's fear of injury argument under McNeil. It says that to satisfy that prong of the statute, the last of the three ways in the Hobbes Act robbery statute, is that it requires, for fear of injury, requires physical force, and that's physical violent force. So it would be odd if the first paragraph said, you can't commit Hobbes Act robbery without physical, violent physical force, and then the next paragraph said, actually you can commit Hobbes Act robbery by threatening force against intangible property, which you can't do. So that's why I think that paragraph is best read, that passage is best read that way. And, of course, even if Mathis did acknowledge that you could commit Hobbes Act robbery by threatening intangible property, and we don't think it did, and even if that was dead wrong, that would still be binding on this panel absent en banc consideration. But we don't think that's what it means because we don't think that you can commit Hobbes Act robbery by threatening violent force against intangible property. If the Court has no other questions, I would ask that this Court affirm. Thank you, Mr. Tis. Mr. Birch, you have some time reserved. Thank you, Your Honor. A few points of rebuttal here. First, as to the procedural default issue, Mr. Green had signed an appeal waiver after his initial guilty plea and had no reason really to appeal his conviction at all because of that until Johnson came along. Johnson wasn't there after his initial conviction. And so appealing that sentence right away would have been barred not only by the lower court precedent and the nearly unanimous wall of law there, but also by a Supreme Court decision upholding the residual clause. And the District Court really did recognize what his claim was as a Johnson claim. The District Court and Judge Smith knew what to address in that order. It was the only thing that could have been addressed. And, again, this comes back, Judge Gregory, to this very kind of elementary criminal law way of looking at the application of a statute. You know, you can look at whether the statute itself applies to the conduct. You can look at whether the statute is vague. And those are kind of the basic ways of approaching whether a statute applies and whether a conviction is infirm. And so that, you know, this doesn't go beyond kind of what the judge understood in the lower court and what the judge addressed in that lower court order. And while the appeal was live here, while Mr. Green's appeal was before this court, the court issued a certificate of appealability that specifically referenced the fact that his claim was premised on Davis. And so he would have had no reason to refile a motion after Davis because this court had already acknowledged that it was willing to address those Davis-based claims, which essentially did arise out of Johnson, and he had filed that motion within a year of Johnson. If we find that the motion was timely as to Count 34, are you asking us to consider the merits or send it back to the district court? Your Honor, while this court can certainly send it back to the district court if it feels appropriate, we believe that this is a question of law that can easily be resolved before this court. And that sending it back to the district court would be an inefficient way of using the court's resources. So again, while, you know, that's entirely within this court's purview, it would be best to resolve this question of law here. And then, you know, next, you know, essentially his claim really does stem from Davis. And, you know, my friend across the aisle here suggested that this is, you know, an attack on the elements clause and that there's an assertion of a right to be free from the unconstitutional elements clause. But the reality is that he is attacking his conviction under Davis and the idea that he was convicted under the residual clause and only could have been convicted under the residual clause. That's the challenge. And if that were the, you know, if it was an obvious case that that was what happened here, that it was obvious that the residual clause was what he was convicted under, then Davis would resolve that question in our favor. That would be an easy case. This is a hard case because we have to look at the elements clause itself. We have to look at whether the elements clause could have applied. But it doesn't. And because the elements clause doesn't apply, we know that he must have been convicted under the residual clause. And because he must have been convicted under the residual clause, Davis tells us that that conviction isn't firm. Next, we can know that the, we can know that Hobbs Act robbery itself can be committed by creating a fear of injury to intangible property. We know that from Mathis, which said there's no distinguishing between tangible and intangible property for the purposes of defining a crime of violence. That's language from Mathis. And we know that from looking at the pattern jury instructions and jury instructions that have been used in this circuit. While it's true that not all jury instructions specifically reference economic harm, many jury instructions do. And we can look at jury instructions from the Fifth Circuit, the Eleventh Circuit, federal jury instructions, all of which define Hobbs Act robbery and Hobbs Act extortion separately. And in the Hobbs Act robbery instruction, specifically include the idea that one can commit a Hobbs Act robbery by creating a fear of injury to intangible property, economic interests, things of that nature. So it's entirely possible to commit Hobbs Act robbery by threatening intangible property. And then finally, you know, there is in Mathis a discussion of the intimidation. And my friend across the aisle here raised that discussion of intimidation and the fear of injury. But that raises the same problems that were raised in Malacu and the same problems of analyzing the risk of bodily harm in the elements clause and replicating the work that had been done by the residual clause. Thank you. Thank you, Mr. Birch. I note that you are a court opponent. And I want to, on behalf of the court, thank you. Depending upon lawyers like yourself who take on these cases to help us meander through these thorny issues. And also you have another assignee too to introduce us. Let's introduce some special person to us today who's a student. That's me, Your Honor. This is Caleb Grant and this is Sarah Grace McCord who helped me on the briefs in this case. And thank you very much for giving me a chance. And what school? University of Georgia. University of Georgia. National champion. Go Dawgs. Well, you know, Judge Thacker would mention that. Sorry. But you're so good. I'm a Michigan grad, but I'm glad that we weren't there to get the results that happened in the finals. But thank you so much. You did a great job and we appreciate students coming in. And thank you so much. And also, of course, Mr. Tierce, thank you for your able representation of the United States. With that, we'll go to our next case.
judges: Roger L. Gregory, James Andrew Wynn, Stephanie D. Thacker